+

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| PHU SU, | NO. CIV. 2:09-1826 WBS GGH |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT |
| COUNTY OF SACRAMENTO; Deputy Sheriff JAMES PETRONIVICH, individually and in his official capacity (Badge # 856); and Sheriff JOHN MCGINNESS, in his official capacity, | |
| Defendants. | |

----oo0oo----

Plaintiff Phu Su filed this civil rights action under 42 U.S.C. § 1983 after he was allegedly subjected to excessive force by defendant Sacramento County Deputy Sheriff James Petronivich during a traffic stop. Presently before the court is plaintiff's motion for partial summary judgment as to Deputy

1

1 Petronivich's liability pursuant to Federal Rule of Civil
2 Procedure 56.
3 I.   Factual and Procedural Background
4          On November 28, 2008, defendant Deputy Petronivich and
5 Deputy Michelle Ball were on regular patrol driving northbound on
6 Sampson Avenue in Sacramento when they observed a vehicle
7 traveling in the opposite direction without a front license plate
8 in violation of California Vehicle Code section 5200.  (Butts
9 Decl. Ex. 2 ("Petrinovich Depo.") at 20:2-17.)  Petrinovich was
10 driving the patrol vehicle and Ball was riding in the front
11 passenger seat.  (Id. at 20:2-6.)  Petrinovich made a u-turn and
12 positioned himself behind the vehicle, a black 2006 Chrysler 300
13 being driven by plaintiff.  (Id. at 20:2-17.)  The officers ran a
14 search on the car's rear plate, finding that it was registered to
15 a 300 Chrysler, but could not confirm that the plates were
16 properly attached to the vehicle in front of them.  (Id. at
17 33:19-34:9)

18          As Petrinovich caught up to plaintiff's vehicle, he
19 observed it make a right hand turn onto the westbound left lane
20 on 47th Avenue without coming to a complete stop behind the limit
21 line of the intersection's stop sign in violation of California
22 Vehicle Code section 22450.  (Id. at 20:2-17.)  Petrinovich
23 followed plaintiff's car onto 47th Avenue and activated the
24 patrol car's red light and siren to signal plaintiff to pull to
25 the side of the road.  (Id. at 22:2-6.)  Plaintiff became aware
26 that the patrol car wanted him to stop while he was making the
27 right turn on 47th Avenue.  (Butts Decl. Ex. 10 ("Su Depo.") at
28 38:1-3.)

Plaintiff moved from the left lane to the right lane, but continued to drive at approximately thirty-five miles per hour down 47th Avenue.  (Petrinovich Depo. at 22:2-12.) Plaintiff continued driving down 47th Avenue without braking, signaling his intention to turn, or slowing down.  (Id. at 23:2-8.)  Petrinovich believed that the vehicle could have stopped safely on the right hand side of the road, but that plaintiff failed to either pull over or turn down one of the first four side streets he passed.  (Id. at 22:9-12, 23:2-8; Su Depo. at 42:5-9.)

After traveling approximately two-tenths (.2) of a mile at thirty-five miles per hour for forty-three seconds, plaintiff slowed down and turned right onto 45th Street.  (Petrinovich Depo. at 25:10-23.)  Plaintiff then pulled his car to the right hand side of the street but continued to idle forward in the gutter at approximately ten miles per hour.  (Id. at 28:25-29:3.) Petrinovich followed, stopped his patrol car behind plaintiff's vehicle, and yelled to plaintiff to stop the car.  (Id. at 29:14-17.)  Deputy Ball exited the patrol car and immediately approached plaintiff's vehicle on the passenger side with her gun drawn while Petrinovich stood next to the patrol car with his weapon drawn.  (Id. at 30:10-20.)  At the time, Petrinovich states that he was conducting the stop as a pursuit due to the extended amount of time plaintiff took to stop the car.  (Id. at 37:16-18.)

Once the car came to a complete stop, Petrinovich ordered plaintiff to turn off his car and place his hands out the window; plaintiff complied.  (Id. at 29:18-23, 30:16-17; 42:18-

3

20.)  Ball stood next to the passenger side of plaintiff's vehicle with her gun pointing at the vehicle's passengers.  (Id. at 30:18-20.)  Once plaintiff's hands were outside his vehicle, Petrinovich approached the vehicle with his gun drawn and looked into the vehicle.  (Id. at 42:22-24.)  While approaching plaintiff's vehicle, Petrinovich detected the smell of marijuana.  (Id. at 44:6-10.)  Upon arriving at the vehicle, Petrinovich holstered his gun and opened the driver's side front door.  (Id. at 43:1-2.)  Petrinovich then grabbed plaintiff's wrists, one in each hand, while he was still sitting in the driver's seat and ordered plaintiff out of the vehicle.  (Id. at 43:1-3; Butts Decl. Ex. 1, ("In-Car Camera DVD") at 11/28/2008 21:51:13.)  Petrinovich contends that he held plaintiff's wrists so that he could control plaintiff's hands in the event plaintiff attempted to harm Petrinovich or go for a weapon.  (Petrinovich Depo. at 49:9-14, 50:22-25.)  Petrinovich intended to detain plaintiff and place him in handcuffs.  (Id. at 47:4-10.)

   While plaintiff was exiting the vehicle, Petrinovich allegedly told him to face the vehicle and attempted to guide his wrists so that plaintiff was facing the vehicle.  (Id. at 43:3-6.)  Petrinovich alleges that plaintiff refused to comply and argued with Petrinovich over why he was pulled over and why he had to face the vehicle.  (Id. at 49:6-9.)  Plaintiff claims he did not make any such statements.  (Su Depo. at 48:14-16.)  Petrinovich also alleges that plaintiff was attempting to pull his right arm free from Petrinovich's grasp.  (Petrinovich Depo. at 49:6-9.)

   Petrinovich released his hold on plaintiff's left wrist

and grabbed plaintiff's right hand with his right hand, twisted it down to put it behind plaintiff's back, and moved plaintiff's body to face the vehicle.  (Id. at 44:18-21, 45:1-4, 52:3-5; In-Car Camera DVD at 11/28/2008 21:51:18.)  Petrinovich kept plaintiff's right hand in a rear wrist lock and attempted to put plaintiff's left hand on the back of his head.  (Petrinovich Depo. at 45:1-4, 53:1-5.)  During this time, plaintiff's left hand remained free near his waistband.  (Id. at 53:1-4.) Plaintiff's right elbow was then lifted upward behind his back, after which, in what appears to be one continuous motion, Petrinovich turned plaintiff away from the car and took him to the ground.  (Id. at 53:1-5, 53:7-14, 54:6-10, 54:13-20; In-Car Camera DVD at 11/28/2008 21:51:26.)  Once plaintiff was taken to the ground, Ball moved from the passenger's side of the car to the driver's side, keeping her gun drawn and pointed at the two passengers in the vehicle.  (In-Car Camera DVD at 11/28/2008 21:51:31.)

Once on the ground, plaintiff was face-down with both his hands underneath him, allegedly near his waistband.  (Petronivich Depo. at 55:21-25, 56:4-5.)  Petrinovich placed his knee on plaintiff's back after plaintiff allegedly tried to push up off the ground.  (Id. at 55:21-25, 56:4-6, 57:3-16, 58:8-9, 58:12-17.)  Petrinovich states that he instructed plaintiff to put his hands behind his back and that plaintiff did not comply.  (Id.)  While they were on the ground, an unknown male individual with a dog approached.  (Id. at 59:15-19.)  Petrinovich was unsure of the man's intentions as he moved toward Petrinovich and plaintiff.  (Id. at 59:15-60:9.)  Petrinovich then struck

5

plaintiff approximately nine times in his upper back and rear portion of his head while allegedly instructing plaintiff to comply. (Id. at 55:21-25, 56:4-6, 57:3-16, 58:8-9, 58:12-17.) Plaintiff eventually put his hands behind his back, at which point Petrinovich handcuffed him and took him to the patrol car. (Id. at 58:22-24, 59:10-12.) Plaintiff denies that he failed to comply with any orders from Petrinovich or or that he resisted or attempted to resist Petrovich at any time. (Su Depo. at 52:18-53:2.)

Additional officers then arrived on scene and conducted a search of plaintiff's car. (Butts Decl. Ex. 3 ("Petrinovich Decl.") ¶¶ 102, 105.) The search of the vehicle uncovered a plastic bag in the glove box containing 3.7 grams of marijuana and that one of the passengers was carrying hashish. (Id. ¶¶ 106, 108.) Plaintiff and the passenger were arrested and taken to Sacramento County Main Jail. (Id. ¶ 109.) Plaintiff was charged with failure to comply with the lawful order of a police officer, Cal. Vehicle Code § 2800(a), driving while in the possession of marijuana, Cal. Vehicle Code § 23222(b), and resisting a police officer, Cal. Penal Code § 148(a)(1).

Plaintiff initiated this § 1983 civil rights action against the County of Sacramento, Petrinovich, and Sacramento County Sheriff John McGinness on July 2, 2009. Plaintiff now moves for partial summary judgment as to Petrinovich's liability under § 1983 based on the video of the incident recorded by the in-car camera in Petrinovich's patrol car.

II. Discussion

Summary judgment is proper "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also id. R. 56(a) ("A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim.").  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.  Where the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.  Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial."  Fed. R. Civ.

7

P. 56(e); <u>Celotex Corp.</u>, 477 at 324; <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989).  In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party, but may not engage in credibility determinations or weigh the evidence.  <u>Anderson</u>, 477 U.S. at 255; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

In relevant part, § 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights.  42 U.S.C. § 1983; <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

Plaintiff contends that Petrinovich violated his Fourth Amendment rights by using excessive force against him during his arrest.  Under the Fourth Amendment, police may use only such force during an arrest as is objectively reasonable under the circumstances.  <u>Graham</u>, 490 U.S. at 397.  This analysis requires "balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances." <u>Smith v. City of Hemet</u>, 394 F.3d 689, 701 (9th Cir. 2005) (quoting <u>Graham</u>, 490 U.S. at 396).

8

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).  A determination of whether the force an officer used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 397 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

Plaintiff argues that the video taken of his arrest by the camera inside of Petrinovich's parol car proves unequivocally that the force used against him was objectively unreasonable. The Supreme Court has recognized that video evidence can be sufficient to defeat a party's version of the facts at summary judgment when it shows that a party's testimony is "blatantly contradicted by the record, so that no reasonable jury would believe it." Scott, 550 U.S. at 380.

Simply viewing the video, the force used by Petrinovich would appear to be excessive under the circumstances.  However, this a question for the jury to decide. See Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."); see also Smith, 394 F.3d at 701 ("'Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit

has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002))). Given the evidence and declarations submitted by Petrinovich, this court cannot conclude that no reasonable juror could find that the force used was reasonable. To properly decide this case the court would need to weigh the credibility of the testimony of the officers on scene against the video footage and plaintiff's testimony. Such weighing of the evidence and credibility determinations are improper on summary judgment and are properly left to the jury. See Smith, 394 F.3d at 701.

      IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment be, and the same hereby is, DENIED.

DATED: August 12, 2010

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE